UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

JUAN SEBASTIAN MOSSOS,
*on behalf of himself and others similarly situated*,
Plaintiff,

-against-

NDC NEWBURGH LLC d/b/a NOCHES DE COLOMBIA NEWBURGH, JUAN CAMILO RODRIGUEZ, SANDRA MILENA VALENCIA, and JOHN DOES as the top 10 shareholders of NDC NEWBURGH LLC d/b/a NOCHES DE COLOMBIA NEWBURGH,

Defendants.
-----------------------------------------------------------X

Civil Action No.:

29 U.S.C. §216(b)
COLLECTIVE ACTION & FED. R. CIV. P. 23 CLASS ACTION

**VERIFIED COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Juan Sebastian Mossos, on behalf of himself and others similarly situated, by and through his attorney, Jennifer S. Echevarria, Esq., hereby complains of the Defendants as follows:

**THE PARTIES**

1. At all relevant times herein, Plaintiff Juan Sebastian Mossos ("Plaintiff" or "Plaintiff Mossos") maintained a residence in the Town of East Fishkill, County of Dutchess, State of New York.

2. At all relevant times herein, Defendant NDC Newburgh LLC d/b/a Noches de Colombia Newburgh (hereinafter "NDC"), was and is a domestic business corporation organized under the laws of the State of New York with a principal place of business at 16 N Plank Road, Newburgh, County of Orange, State of New York.

3. NDC is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

4. At all times relevant herein, NDC purchased and handled goods moved in interstate or foreign commerce, including food, alcoholic and non-alcoholic beverages, and restaurant equipment.

5. At all relevant times herein, upon information and belief, Defendant Juan Camilo Rodriguez was part owner and manager of NDC.

6. At all relevant times herein, upon information and belief, Defendant Sandra Milena Valencia was part owner and manager of NDC.

7. At all relevant times herein, upon information and belief, Defendants Juan Camilo Rodriguez and Sandra Milena Valencia were two of the top ten largest shareholders of NDC.

8. At all relevant times herein, Defendants John Does, whose identities are presently unknown, were the other top ten largest shareholders of NDC.

9. Defendants NDC, Juan Camilo Rodriguez, Sandra Milena Valencia and the John Does, identified in Paragraph "8" (jointly the "Defendants"), were Plaintiff's employers as that term is defined by the Fair Labor Standards Act ("FLSA"), New York State Labor Law ("NYSLL"), Title VII of the Civil Rights Act ("Title VII"), and the New York State Human Rights Law ("NYSHRL").

10. Starting on or about December 24, 2020, until May 12, 2024, Defendants employed Plaintiff as a food runner and waiter.

11. At all relevant times herein, Defendants hired, fired, supervised, controlled, paid, and maintained employee records for Plaintiff.

12. As described below, Defendants acted intentionally and maliciously to deprive Plaintiff and other employees similarly situated of their wages, as Defendants are sophisticated

businesspersons and knew what the law required, and ultimately terminated Plaintiff Mossos in retaliation for complaining of same.

13. In addition, as described below, Defendants created, enabled, and/or motivated a sexually hostile work environment, subjected Plaintiff to unwelcome sexual touching and language due to his sex, and retaliated against him when he complained about the sexual harassment.

## JURISDICTION AND VENUE

14. Jurisdiction is appropriate under 28 U.S.C. §1331 as this action pertains to violations of Federal Law, to wit, the FLSA at 29 USC 201, *et seq.*, and Title VII of the Civil Rights Act of 1964 located at 42 U.S.C. 2000e, *et seq.*, as well as violations of the New York State Labor Law §652 et seq., and New York State Human Rights Law §290, *et seq.*, which can be heard by this Court pursuant to 28 U.S.C. §1367(a).

15. Venue is based on Defendants' the place of business, the place where the acts and occurrences complained of herein occurred, and Plaintiff's residence, and is appropriate in this District pursuant to 28 U.S.C. §§ 112(b) and 1391(b) and (c).

## STATEMENT OF FACTS APPLICABLE TO WAGE AND HOUR CLAIMS

### *Introduction*

16. Defendants committed the acts described below knowingly, intentionally, willfully, and maliciously against Plaintiff and other, similarly situated non-exempt employees, as they are sophisticated businesspersons that own multiple "Noches de Columbia" franchise restaurants and knew what the law required in terms of paying their workers.

17. At all times relevant herein, Defendants knowingly, willfully and maliciously failed to pay Plaintiff Mossos and similarly situated employees the proper base/cash wage, claiming more

of a tip credit than permissible under the law, failed to pay them for all hours worked, and at times paid then less than minimum wage.

18. At all times relevant herein, Defendants knowingly, willfully and maliciously failed to pay Plaintiff Mossos and similarly situated employees on a weekly basis when their checks bounced on multiple occasions, and refusing to reimburse them for their banks' returned check fees.

19. At all times relevant herein, Defendants knowingly, willfully and maliciously failed to pay Plaintiff Mossos and similarly situated employees paid sick leave.

20. At all times relevant herein, Defendants knowingly, willfully and maliciously failed to pay Plaintiff Mossos and similarly situated employees spread of hours pay for every day that they worked ten (10) hours or more.

21. At all relevant times herein, Plaintiff and similarly situated employees were not provided a written notice at the time of hire or any time thereafter, disclosing and explaining their hourly wages.

22. At all relevant times herein, Plaintiff and similarly situated employees were not provided accurate pay statements each time they were paid, as the paystubs they received failed to include the proper base/cash wage, and did not include spread of hours pay or all hours worked in a given period.

23. After Plaintiff complained about the failure to pay proper wages and the bounced checks, Defendants terminated him.

***Wage and Hour Facts***

24. Plaintiff Mossos began to work for Defendants in or around December 24, 2020, when he was hired by Defendants' Manager, Liliana Mejia, as a food runner.

25. At the time of hiring, Plaintiff was not given anything in writing advising him what his hourly or overtime wage rate would be, how much his tip credit would be, or any other facts about his wages.

26. Plaintiff is unable to recall how much the base/cash wage was at the time he was hired; Plaintiff requested all of his paystubs at the time of his termination but Defendants refused to provide them.

27. Upon information and belief, when Plaintiff was promoted to waiter in or around June 2021, Plaintiff was paid a base/cash wage of $8.35 per hour.

28. Plaintiff's base/cash wage rate remained at $8.35 per hour until the time of his termination in 2024; upon information and belief, all waitstaff were paid the same base/cash wage rate per hour during that time.

29. The New York State minimum base/cash wage rate for tipped food service employees in 2022 was $8.80/hour; 2023 was $9.45/hour; and 2024 was $10.00/hour; during those years, Plaintiff and similarly situated employees were paid less than these base/cash wage rates for each hour that they worked.

30. In addition, when working as a waiter during the weekday shifts, Plaintiff would regularly be required to work 2-3 hours a shift on "side work" that did not allow him to earn tips, such as cleaning, refilling sauces and condiments; on these days, he did not earn the state minimum wage for each hour that he worked since he did not collect any tips to augment the base/cash wage rate.

31. Furthermore, Plaintiff would regularly work the morning shift on Wednesdays and Thursdays from 7 am to 3 pm and would be required to work about an hour off-the-clock after 3

pm because, as per management, they would not pay past 3 pm for morning shifts. Upon information and belief, this was also done to other, similarly situated employees.

32. Plaintiff would also regularly work twelve (12) to thirteen (13) hour shifts on Saturdays and Sundays, yet he was never paid an extra hour at the minimum wage for spread of hours pay, as required by State law. Upon information and belief, this was also never done for other similarly situated employees working ten (10) hours or more in one day.

33. On February 7, 2024, Plaintiff's paycheck from Defendants dated February 2, 2024, bounced and his bank charged him a returned check fee of twelve dollars and 00/100 cents ($12.00). Upon information and belief, this also happened to several if not all employees cashing their checks for that week.

34. Defendants refused to reimburse Plaintiff for the bank's returned check fee, or for interest for not being paid on time.

35. On April 4, 2024, Plaintiff's paychecks from Defendants dated March 22 and 29, 2024, also bounced and his bank again charged him a returned check fee of twelve dollars and 00/100 cents ($12.00) for each bounced check. Upon information and belief, this also happened to several if not all employees cashing their checks for those weeks.

36. Defendants again refused to reimburse Plaintiff for the bank's returned check fees, or for interest for not being paid on time.

37. On or about April 13, 2024, Plaintiff recorded a phone conversation with Defendants' Manager, Liliana Mejia, wherein he complains of the bounced checks and the incorrect base/cash wage rate and Mejia responds defensively by blaming others and then telling him he is not needed for work that weekend.

38. On or about May 11, 2024, Plaintiff recorded an in-person meeting he had with Defendant Juan Camilo Rodriguez wherein Plaintiff complained about the bounced checks, the incorrect base/cash wages he was still being paid, not being given meal breaks, being required to purchase work uniforms at his own expense, and other work-related issues such as sexual harassment (described below). During that conversation, Defendant Camilo Rodriguez reiterated several times that Plaintiff was needed to work that weekend since it was Mother's Day Weekend and they expected a lot of customers.

39. The following morning, on May 12, 2024, Plaintiff received a call from manager Jorge Velasco telling him that his services were no longer needed and that he was terminated, effective immediately.

40. Upon information and belief, NDC had over fifty (50) employees at the time of Plaintiff's termination, i.e., at or around May 12, 2024.

41. Upon information and belief, NDC has had hundreds of employees over the course of the statute of limitations, i.e., the last six (6) years from the date of filing of this Complaint.

***Collective Action Allegations***

42. Plaintiff Mossos brings his claims individually and on behalf of all other current and former non-exempt workers employed by Defendants over the three years preceding the filing of this Complaint, through the entry of judgment in this case (the "Collective").

***Class Allegations***

43. Plaintiff Mossos also brings his claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all other current and former non-exempt workers employed by Defendants over the six years preceding the filing of this Complaint, through entry of judgment in this case (the "Class").

44. The Class members are readily ascertainable. The Class members' names, phone numbers, addresses, positions held, hours assigned and worked, and rates of pay are determinable from Defendants' records. Notice can be provided by means permissible under Rule 23.

Numerosity

45. The Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

46. Although the precise number of such persons is unknown, and the facts on which the calculation of the precise numbers are presently within the sole control of Defendants, upon information and belief, there are more than 40 members of the Class.

Commonality

47. There are questions of law and fact common to the Class which predominate over any questions affecting individual members, including but not limited to: 1) whether Defendants paid the Collective and/or the Class members wages that met the required State minimum wage for tipped employees; 2) whether the Class members were paid for all time worked when they were required to work after clocking out; 3) whether the Class members were paid the required minimum wages when they performed "side work"; 4) whether the Class members were given proper and accurate wage notices and statements as required by Labor Law Sections 195(1) and (3); 5) whether Class members, as manual laborers, are owed damages for receiving their wages late every time their checks bounced; 6) whether the Class members were illegally denied paid sick leave under New York State Law; and 7) whether the Class members are owed spread of hours pay for each day that they worked ten (10) or more hours a day.

Typicality

48. Plaintiff Mossos's claims are typical of those claims which could be alleged by any Class member, and the relief sought is typical of the relief that would be sought by any Class member in a separate action.

49. All the Class members were subject to the same policy and practice of not paying employees for all hours worked or the proper wages, of not paying employees on a timely basis, not paying spread of hours pay, not providing paid sick leave, and not providing accurate wage notices and statements.

50. Defendants' policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member.

51. Plaintiff Mossos and the other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies and practices.

Adequacy

52. Plaintiff Mossos is fairly and adequately able to protect the interests of the Class and has no interests antagonistic to the Class.

53. Plaintiff Mossos is represented by an attorney who is experienced and competent in representing plaintiffs in wage and hour employment litigations.

Superiority

54. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant.

55. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender.

56. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.

57. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; treating the claims as a class action would result in a significant saving of these costs.

58. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests though actions to which they were not parties.

59. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

60. Upon information and belief, Defendants and other employers throughout the State violate the NYSLL and current employees are often afraid to assert their rights out of fear of direct or indirect retaliation; former employees are fearful of bringing claims because doing so can harm their future employment and efforts to secure employment. Class actions provide class members

who are not named in the Complaint with a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF FACTS APPLICABLE TO SEX DISCRIMINATION CLAIMS

61. Plaintiff is a male, 24 years of age.

62. He began working at NDC in or around December 24, 2020.

63. He was hired as a food runner and then worked his way up to being a waiter.

64. From the time of his hiring up to around Spring 2024, NDC continuously subjected him to sex discrimination in the form of unwelcome sexual touching, quid pro quo sexual harassment and sexually hostile work environment.

65. An example of the unwelcome touching was when Defendants' Manager, Damaris Avilla, on an almost daily basis, found ways to constantly touch Plaintiff's his chest, shoulders, and/or arms whenever she spoke to him.

66. An example of the sexually hostile work environment and quid pro quo sexual harassment was as follows. The policy at NDC was that, if the waiters had a party of six (6) people or more, or if the waiters sold certain high profit items, they could automatically add a certain percentage of gratuity to the customers' bills, but they had to get a manager to do it.

67. Whenever Plaintiff was eligible for the automatic gratuity, he would ask Defendants' Manager, Damaris Avilla, (in Spanish): "me puedes poner gratuity en la mesa 'X'?" which translates to "can you put gratuity on table 'X' for me?". Avilla would respond: "te puedo poner muchisimo mas donde tu quieras!" which translates to: "I can put much more wherever you want!"

68. Plaintiff interpreted this as a sexual offer, for Avilla to put herself or a body part of hers wherever Plaintiff wanted (in a sexual way).

69. Plaintiff would nervously smile and side-step her comment by just repeating: "table 'X' please, thank you." Then he would leave as quickly as possible to avoid her and remove himself from the situation.

70. Another example was that, on multiple occasions, Avilla would comment on Plaintiff's Italian girlfriend, telling Plaintiff that he should get a girlfriend with experience like her (Avilla), since Plaintiff's Italian girlfriend didn't know how to give it (sex) to him (in Spanish: "necesitas una mujer con experiencia como yo, que esa Italiana no sabe como hacerlo.").

71. During these occasions, many times Defendants' other Manager, Liliana Mejia, would be present and she would encourage Avilla by telling Plaintiff that he should acquiesce to Avilla's advances to satisfy her horniness (in Spanish: "vamos, hermano, le tienes que quitar el calor a Damaris!").

72. Manager Liliana Mejia would also encourage Damaris Avilla by interjecting that Plaintiff should find a woman like Avilla so that he could learn how to pleasure his Italian girlfriend (in Spanish: "tienes que conseguirte una mujer como Damaris para que aprendas a complacer la Italiana."), or tell him that he could practice on and learn from Avilla, so that he could then show what sexual things he had learned to his Italian girlfriend (in Spanish: "con Damaris puedes practicar y que te enseñe, para que le demuestres a la Italiana").

73. On other occasions, Plaintiff would ask that a dinner meal be prepared for him at the end of his shift (as was allowed by NDC) and he would have to ask Manager Damaris Avilla. He would ask, in Spanish: "Damaris, me puedes mandar una pechuga?" which essentially translates to: "Damaris, can you send a ticket to the kitchen for a chicken breast for me?" Avilla would respond by asking Plaintiff which breast of hers did he want, moving her breasts with her

hands and pointing them towards him from left to right. Plaintiff would nervously just reply: "chicken breast, thanks," and leave the situation as quickly as possible.

74. These incidents were all very embarrassing, uncomfortable, and demeaning to Plaintiff. Plaintiff would be shocked and turn red; he was so embarrassed that he was being spoken to in that way at work.

75. The most Manager Liliana Mejia would say to "help" Plaintiff was to hiss "Demaaaarrisssss" with a smile at Manager Damaris Avilla.

76. But, most of the time, Manager Liliana Mejia would encourage Manager Damaris Avilla as stated above, and would also say to Plaintiff that he should take advantage of Avilla's offer, because Avilla could be his "sugar mommy" and give him all the hours he wanted at work.

77. Plaintiff interpreted these statements as a "quid pro quo" offer; he was made to think that if he acquiesced to these advances and had a sexual relationship with Avilla, that he would be better off financially because he would be given more hours during peak times (i.e., on the weekends).

78. In addition, there was an incident in the fall of 2023 wherein Plaintiff's co-worker, Keydili Solis, grabbed and smacked his buttocks at work while saying that his butt was calling her, that she had wanted to do that for a long time (in Spanish: "me estaba hacienda caritas esa colita, la he querido agarrar por mucho tiempo"). This happened behind the main register in front of bakery employees and customers.

79. Upon information and belief, the bakery employees told Managers Avilla and Mejia about this incident and they laughed it off and never addressed the situation.

80. On a later date, Plaintiff approached a table where Avilla, Mejia, and Keydili Solis were seated, as Plaintiff wanted to ask a work-related question. At that time, Damaris Avilla

commented about Solis grabbing Plaintiff's buttocks, to which Liliana Mejia responded: "Damaris, she's stealing your man!" (in Spanish: "te estan robando tu hombre, Damaris!"). Then they all laughed.

81. Plaintiff was too afraid to say that the incident was not funny and made him extremely uncomfortable, because he knew Solis was one of the preferred employees and complaining about her would cause problems for him.

82. Another incident occurred in August 2023 when Manager Liliana Mejia presented Damaris with a birthday cake in front of all the staff – including Plaintiff – with a large dildo on top of it as a decoration, which Plaintiff found to be disgusting, unprofessional, and yet another example of the sexually hostile work environment to which he was being subjected.

83. The combination of these incidents made it extremely difficult for Plaintiff to perform his job, as he was very uncomfortable and afraid of being grabbed or confronted with a sexual innuendo at any time, and not knowing how to respond.

84. These incidents continued to happen almost every time that Plaintiff worked, and at least once a week during his entire tenure at NDC.

85. These incidents continued to happen until around April 2024, when Plaintiff started complaining to management about bounced checks and incorrect wages; at that time, everyone started treating him like a pariah and stopped joking around with him, as he was no longer liked by management.

86. Defendants own and/or manage other Noches de Columbia restaurants, which share employees with NDC and, upon information and belief, share in the responsibility of paying employees and paying for capital improvements in the NDC Newburgh location. These restaurants

are apparently in Nanuet, NY, Port Chester, NY, and Stamford, CT, and may be jointly responsible as horizontal employers for the wages and/or damages owed in this case.

## STATEMENT OF CLAIMS

### FIRST CLAIM ON BEHALF OF PLAINTIFF, THE COLLECTIVE AND THE CLASS FOR FAILURE TO PAY MINIMUM WAGES UNDER FAIR LABOR STANDARDS ACT 29 U.S.C. 206 and 215

87. Plaintiff repeats and realleges each and every allegation contained in Paragraphs "1" through "86" as though fully set forth at length herein.

88. During the approximately three and a half (3.5) years that Plaintiff worked for Defendants, he was forced to work approximately one (1) hour off the clock after working morning shifts on Mondays through Fridays, for which he was never compensated.

89. In addition, whenever Plaintiff was required to do "side work" without earning tips, he was paid only $8.35 per hour which was less than the New York State minimum wage; FLSA, at 29 U.S.C. 218(a), requires that where a State has passed a higher minimum wage than the Federal standard, that the higher State standard applies.

90. Upon information and belief, other similarly situated employees were also not paid for all hours that they worked or paid the New York State minimum wage, as required by Federal law.

91. Defendants were aware that they were violating the FLSA when they failed to pay Plaintiff and similarly situated employees for all the time that they worked, or failed to pay them the minimum wage, as they are sophisticated businesspersons that have, upon information and belief, been in business for a long time, own and/or manage other Noches de Columbia restaurants, and knew that employees were not choosing to work for free or for below the legal minimums.

92. By failing to pay Plaintiff, the Collective and the Class minimum wages, or wages for all the time they worked, Defendants willfully violated FLSA at 29 U.S.C. 206 and 215.

93. Plaintiff has not previously initiated a complaint for the relief claimed herein before any other court.

94. Therefore, Plaintiff, on behalf of himself, the Collective and the Class, demands payment of unpaid regular wages and an equal amount in liquidated damages under FLSA 29 U.S.C. 216(b), prejudgment interest on said unpaid wages, attorney's fees, costs and disbursements, and such other and further relief that this Court deems just and proper.

**SECOND CLAIM ON BEHALF OF PLAINTIFF AND THE CLASS FOR FAILURE TO PAY MINIMUM WAGES UNDER NEW YORK STATE LABOR LAW SECTIONS 652, 663(1) AND 198(1-a)**

95. Plaintiff repeats and realleges each and every allegation contained in Paragraphs "1" through "94" as though fully set forth at length herein.

96. During the approximately three and a half (3.5) years that Plaintiff worked for Defendants, he was forced to work approximately one (1) hour off the clock after working morning shifts on Mondays through Fridays, for which he was never compensated.

97. In addition, Plaintiff was regularly required to work doing "side work" for $8.35/hour since he was not making any tips during those times.

98. Furthermore, Plaintiff was regularly paid less than the State minimum wage as Defendants took a larger tip credit than permitted under State law and there were times that he did not earn enough tips to bring him up to the State minimum wage.

99. Upon information and belief, other similarly situated employees were also not paid for all hours that they worked, and/or were also paid below the state minimum wages.

100. Defendants were aware that they were violating the NYSLL when they failed to pay Plaintiff and similarly situated employees for all the time that they worked and/or at the correct wage rates, as they are sophisticated businesspersons that have, upon information and belief, been in business for a long time, own other Noches de Columbia restaurants, and knew that employees were not choosing to work for free or for below the legal minimums.

101. By failing to pay Plaintiff and the Class wages for all the time they worked and at less than the minimum wage, Defendants willfully violated NYSLL Section 652.

102. Plaintiff has not previously initiated a complaint for the relief claimed herein before any other court.

103. Therefore, Plaintiff, on behalf of himself and the Class, demands payment of unpaid wages and an equal amount in liquidated damages under NYSLL Sections 198(1-a) and 663(1), prejudgment interest on said unpaid regular wages, attorney's fees, costs and disbursements, and such other and further relief that this Court deems just and proper.

**THIRD CLAIM ON BEHALF OF PLAINTIFF AND THE CLASS FOR FAILURE TO PAY MANUAL WORKERS ON A WEEKLY BASIS UNDER NEW YORK LABOR LAW SECTION 191(1)(a)**

104. Plaintiff repeats and realleges each and every allegation stated or contained in Paragraphs "1" through "103" above as though fully set forth at length herein.

105. As a food runner and waiter, over 25% of Plaintiff's work responsibilities included manual labor such as carrying food and drinks to and from the kitchen to restaurant guests, waiting on tables, cleaning tables and the restaurant, and filling condiments and sauces for each table.

106. As a manual laborer as that term is defined under the NYSLL, Plaintiff was required to be paid every week under NYSLL §191.

107. Instead, on at least three occasions, Plaintiff was paid weeks late when Defendants' checks to him bounced and he was never reimbursed for the returned check fees or for interest for late payments.

108. Upon information and belief, other similarly situated employees have had those and other, additional checks bounce and were also paid weeks late without being reimbursed therefore.

109. Plaintiff has not previously initiated a complaint for the relief claimed herein before any other court.

110. Therefore, Plaintiff, on behalf of himself and the Class, demands payment of the wages that were paid late as liquidated damages under NYSLL Sections 198(1-a) and 663(1), prejudgment interest, reimbursement of their banks' returned check fees, attorney's fees, costs and disbursements, and such other and further relief that this Court deems just and proper.

**FOURTH CLAIM ON BEHALF OF PLAINTIFF AND THE CLASS FOR FAILURE TO PROVIDE PROPER WAGE NOTICES AS REQUIRED BY NEW YORK LABOR LAW SECTION 195(1)**

111. Plaintiff repeats and realleges each and every allegation stated or contained in Paragraphs "1" through "110" above as though fully set forth at length herein.

112. NYSLL Section 195(1) requires that employers furnish employees with a notice at the time of hiring or within ten (10) days thereafter, advising of the employees' hourly and overtime rates and anticipated payroll pay dates.

113. During the course of his employment, Plaintiff was never given written notice advising him of his correct hourly and overtime rates or of the date that he could expect to be paid.

114. Upon information and belief, NDC's other hourly employees also did not receive written notices of their hourly and overtime rates, or of their pay dates, at the time of hiring or any time thereafter.

115. Plaintiff has not previously initiated a complaint for the relief claimed herein before any other court.

116. Therefore, Plaintiff, on behalf of himself and the Class, demands payment of fifty dollars ($50.00) for each workday that the violations occurred up to five thousand dollars ($5,000.00) for each employee, together with costs and reasonable attorney's fees, as provided under NYSLL Section 198(1-d), and such other and further relief that this Court deems just and proper.

**FIFTH CLAIM ON BEHALF OF PLAINTIFF AND THE CLASS**
**FOR FAILURE TO PROVIDE PROPER WAGE STATEMENTS AS REQUIRED BY NEW YORK LABOR LAW SECTION 195(3)**

117. Plaintiff repeats and realleges each and every allegation stated or contained in Paragraphs "1" through "116" above as though fully set forth at length herein.

118. NYSLL Section 195(3) requires that employers furnish employees with a statement with every payment of wages listing, among other things, the number of regular and overtime hours worked that period; the regular, overtime and prevailing wage rates; and the wages being paid that week.

119. During the time of his employment with Defendants, Plaintiff did not receive proper statements every time he was paid, given that the paystubs did not accurately reflect all hours worked nor the proper minimum base/cash wages required under the law.

120. Upon information and belief, similarly situated employees also did not receive accurate statements when they were paid as they also failed to reflect all hours worked and the proper minimum base/cash wages required under the law.

121. Plaintiff has not previously initiated a complaint for the relief claimed herein before any other court.

122. Therefore, Plaintiff, on behalf of himself and the Class, demands payment of two hundred fifty dollars ($250.00) for each workday that the violations occurred up to five thousand dollars ($5,000.00) for each employee, together with costs and reasonable attorney's fees, as provided under NYSLL Section 198(1-d), and such other and further relief that this Court deems just and proper.

**SIXTH CLAIM ON BEHALF OF PLAINTIFF AND THE CLASS FOR FAILURE TO PAY SPREAD OF HOURS PAY UNDER MINIMUM WAGE ORDERS OF THE COMMISSIONER OF LABOR**

123. Plaintiff repeats and realleges each and every allegation stated or contained in Paragraphs "1" through "122" above as though fully set forth at length herein.

124. The Minimum Wage Orders of the Commissioner of Labor, at 12 NYCRR 142-2.4, require that an employee shall receive one hour's pay at the basic minimum hourly wage rate for any day in which the spread of hours exceeds ten (10) hours.

125. During Plaintiff's employment by Defendants, he worked over ten (10) hours a day on Saturdays and Sundays.

126. During Plaintiff's employment by Defendants, he never received spread of hours pay as required by 12 NYCRR 142-2.4.

127. Upon information and belief, similarly situated employees also did not receive spread of hours pay when they worked more than ten (10) hours in a single day.

128. Therefore, Plaintiff, on behalf of himself and the Class, demands payment of unpaid spread of hours compensation and an equal amount in liquidated damages under NYSLL Sections 198(1-a) and 663(1), prejudgment interest on said unpaid spread of hours compensation, attorney's fees, costs and disbursements, and such other and further relief that this Court deems just and proper.

## SEVENTH CLAIM ON BEHALF OF PLAINTIFF AND THE CLASS FOR FAILURE TO PROVIDE PAID SICK LEAVE UNDER NEW YORK LABOR LAW SECTION 196-b

129. Plaintiff repeats and realleges each and every allegation stated or contained in Paragraphs “1” through “128” above as though fully set forth at length herein.

130. At the time of Plaintiff’s employment at NDC, NDC had 5-99 employees on its payroll.

131. During the course of his three and a half year employment, Plaintiff took at least eighteen (18) sick days, and he was not paid for his time off.

132. At the time that Plaintiff took sick leave, he had worked enough hours to accumulate paid sick time under the law, and he had not previously used any paid sick time since he began to work for Defendants on or around December 24, 2020, yet he was never paid therefore.

133. Upon information and belief, other similarly situated employees were also not paid for their sick leave as required by law and were instead told – incorrectly - by Defendants that they had to go through New York State to get it. Since many of Defendants’ employees were undocumented, they preferred to take the day off without pay than to contact New York State to take advantage of the paid sick leave program.

134. Plaintiff has not previously initiated a complaint for the relief claimed herein before any other court.

135. Therefore, Plaintiff on behalf of himself and the Class demands payment of wages for the dates that he took sick leave and was not compensated by Defendants, an equal amount in liquidated damages under NYSLL Sections 198(1-a) and 663(1), prejudgment interest on said unpaid regular wages, attorney’s fees, costs and disbursements, and such other and further relief that this Court deems just and proper

**EIGHTH CLAIM BY PLAINTIFF MOSSOS
FOR RETALIATORY DISCHARGE
UNDER NEW YORK LABOR LAW SECTION 215**

136. Plaintiff repeats and realleges each and every allegation stated or contained in Paragraphs "1" through "135" above as though fully set forth at length herein.

137. Section 215(1)(a) of the NYSLL prohibits an employer from discharging or otherwise retaliating against an employee that has in good faith made a complaint to his employer that he reasonably believes the employer has violated provisions of the NYSLL; explicit reference to any section or provision in the NYSLL is not required.

138. Section 215(2)(a) of the NYSLL provides that an aggrieved employee may bring a civil action against an employer that has so discharged and/or retaliated against him, within two years of the discharge and/or retaliation, and that said employee will be entitled to all appropriate relief including liquidated damages up to $20,000.00, payment of costs and reasonable attorney's fees associated with bringing the action, reinstatement with restoration of seniority or an award of front pay in lieu of reinstatement, and an award of lost compensation and damages.

139. In this case, Plaintiff complained to Defendants on several occasions, including on April 13, 2024, and May 11, 2024 (which were recorded), that he had been paid weeks late due to the bounced paychecks and that Defendants were not paying the minimum base/cash wages required under State law. After the most recent conversation with Defendant Juan Camilo Rodriguez on May 11, 2024, Plaintiff was terminated the very next day.

140. Plaintiff had a reasonable and good faith belief that said actions by Defendants violated the FLSA and NYSLL.

141. Within less than twenty-four (24) hours of Plaintiff's most recent complaint about wages to Defendant Juan Camilo Rodriguez, he was terminated.

142. Defendants' termination of Plaintiff was in retaliation for his complaint and therefore violates NYSLL.

143. On June 28, 2024, Plaintiff mailed notice of the Verified Complaint to the New York State Attorney General by priority mail.

144. Plaintiff has not previously initiated a complaint for the relief claimed herein before any other court.

145. Therefore, Plaintiff demands payment of $20,000.00 in liquidated damages, payment of costs and reasonable attorney's fees associated with bringing this action, an award of front pay in lieu of reinstatement, an award of lost compensation and damages, and such other and further relief that this Court deems just and proper.

**NINTH CLAIM BY PLAINTIFF MOSSOS FOR SEX DISCRMINATION AND SEXUALLY HOSTILE WORK ENVIRONMENT UNDER TITLE VII**

146. Plaintiff repeats and realleges each and every allegation contained in Paragraphs "1" through "145" as though fully set forth at length herein.

147. Title VII of the Civil Rights Act of 1964 establishes that it is an unlawful employment practice for an employer to discriminate against any individual with respect to hiring, promotion, compensation, terms, conditions, or privileges of employment because of such individual's sex.

148. Defendants subjected Plaintiff to sex discrimination in the form of quid pro quo sexual harassment and sexually hostile work environment, as detailed in the Paragraphs above.

149. Defendants' discrimination and harassment were unlawful in that it subjected Plaintiff to inferior terms, conditions and/or privileges of employment because of his sex.

150. On _____________, 2026, Plaintiff received a Right to Sue Letter from the Equal Employment Opportunity Commission, enabling him to bring this claim in Federal Court.

151. Plaintiff has not previously initiated a complaint for the relief claimed herein before any other court or administrative agency.

152. Therefore, Plaintiff respectfully demands affirmative relief, back pay, lost future wages, compensatory damages, punitive damages, attorneys' and experts' fees, costs and disbursements, and such other and further relief that this Court deems just and proper.

**TENTH CLAIM BY PLAINTIFF MOSSOS**
**FOR SEX DISCRMINATION AND**
**SEXUALLY HOSTILE WORK ENVIRONMENT**
**UNDER NEW YORK STATE HUMAN RIGHTS LAW**

153. Plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs "1" through "152" as though fully set forth at length herein.

154. New York State Human Rights Law §296(1)(a) prohibits an employer from discharging or discriminating against an employee in compensation or in terms, conditions or privileges of employment, because of an employee's sex.

155. In addition, New York State Human Rights Law §296(1)(h) prohibits an employer from subjecting any individual to harassment because of an employee's sex.

156. Defendants subjected Plaintiff to sexual discrimination in the form of quid pro quo sexual harassment and sexually hostile work environment as detailed in the Paragraphs above. Defendants did so because he was male.

157. Defendants failed to provide sexual harassment prevention training to its staff the whole time that Plaintiff worked there, further encouraging and condoning a sexually hostile work environment.

158. On May 11, 2024, Plaintiff had a meeting with NDC's owner, Juan Camilo Rodriguez, in which Plaintiff complained, amongst other things, that sexual harassment was rampant in the restaurant and that an employee had been touched inappropriately at the restaurant; the following day, Plaintiff was terminated.

159. Respondents' harassment and discrimination were unlawful in that it subjected Plaintiff to inferior terms, conditions and/or privileges of employment because of Plaintiff's sex.

160. Therefore, Plaintiff, on behalf of himself, demands affirmative relief, back pay and lost future wages, compensatory damages, punitive damages, attorneys' fees, costs and disbursements, and such other and further relief as this Court deems just and proper.

**ELEVENTH CLAIM BY PLAINTIFF MOSSOS FOR RETALIATION UNDER TITLE VII**

161. Plaintiff repeats and realleges each and every allegation stated or contained in Paragraphs "1" through "160" above as though fully set forth at length herein.

162. Title VII of the Civil Rights Act of 1964, at 42 USC Section 2000e-3(a), makes it an unlawful employment practice for an employer to discriminate against any of its employees because the employee has opposed any practice made an unlawful employment practice by Title VII of the Civil Rights Act, or because the employee has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under Title VII of the Civil Rights Act.

163. Plaintiff engaged in protected activity under Title VII when he refused to participate in the sexual talk and "jokes" at the restaurant, when he refused Manager Damaris Avilla's sexual advances, and by opposing sex discrimination and harassment during his meeting with Defendant Juan Camilo Rodriguez on May 11, 2024, as detailed in the Paragraphs above.

164. Defendants retaliated against him by terminating him less than twenty-four (24) hours later, on the morning of May 12, 2024.

165. The manner in which Plaintiff opposed the discrimination did not disrupt or interfere with Defendants' legitimate business concerns.

166. There is a causal connection between the protected activity and the adverse employment action given their temporal proximity.

167. Defendants' retaliatory actions against Plaintiff were done with malice or with reckless indifference to Plaintiff's federally protected rights.

168. On _____________, 2026, Plaintiff received a Right to Sue Letter from the Equal Employment Opportunity Commission, enabling him to bring this claim in Federal Court.

169. Plaintiff has not previously initiated a complaint for the relief claimed herein before any other court.

170. Therefore, Plaintiff, on behalf of himself, demands affirmative relief, back pay, lost future wages, compensatory damages, punitive damages, attorneys' and experts' fees, costs and disbursements, and such other and further relief that this Court deems just and proper.

**TWELFTH CLAIM BY PLAINTIFF MOSSOS**
**FOR RETALIATION**
**UNDER NEW YORK STATE HUMAN RIGHTS LAW**

171. Plaintiff hereby repeats and realleges each and every allegation stated or contained in Paragraphs "1" through "170" as though fully set forth at length herein.

172. Sections 296(1)(e) and (7) of the New York State Human Rights Law make it an unlawful discriminatory practice for an employer to discriminate against an employee because said employee has opposed harassment and/or discrimination based on sex through the filing of a complaint or providing testimony or assistance in any proceeding under the statute.

173. Plaintiff engaged in protected activity when he refused to participate in the sexual talk and "jokes" at the restaurant, when he refused Manager Damaris Avilla's sexual advances, and when he opposed sex discrimination and harassment during his meeting with Defendant Juan Camilo Rodriguez on May 11, 2024, as detailed in the Paragraphs above.

174. Defendants retaliated against him by terminating him less than twenty-four (24) hours later, on the morning of May 12, 2024.

175. The manner in which Plaintiff opposed the discrimination did not disrupt or interfere with Defendants' legitimate business concerns.

176. There is a causal connection between the protected activity and the adverse employment action given their temporal proximity.

177. Defendants' retaliatory actions against Plaintiff were done with malice or with reckless indifference to Plaintiff's federally protected rights

178. Therefore, Plaintiff, on behalf of himself, demands affirmative relief, back pay and lost future wages, compensatory damages, punitive damages, attorneys' fees, costs and disbursements, and such other and further relief as this Court deems just and proper.

## JURY DEMAND

179. Plaintiff demands a trial by jury on all questions of fact.

**WHEREFORE**, Plaintiff, on behalf of himself and on behalf of the Collective and the Class, prays that this Honorable Court:

a. Accept jurisdiction over this matter;

b. Empanel a jury to fairly hear and decide this matter;

c. At the earliest practicable time give notice of this collective action, or authorizing Plaintiff to give notice of this collective action, to all persons who are presently, or have up through

the extent allowable under the statute of limitations and including the date of the notice's issuance, been employed by Defendants as hourly, non-exempt workers. Such notice shall inform such employees that this lawsuit has been filed, of the nature of this lawsuit, and of their right to join this lawsuit if they believe that they suffered wage theft at the hands of Defendants;

d. A declaratory judgment that the practices complained of herein are unlawful under FLSA, NYLL, Title VII, and NYSHRL;

e. An injunction against Defendants, its owners, officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices and policies set forth herein;

f. An award of regular wages for all of Plaintiff, the Collective and the Class's time worked without wages and/or without being paid the legally required minimum wage rate and/or without being paid spread of hours pay and/or paid sick time;

g. An award of liquidated damages equal to the total wages found to be due for the Plaintiff, Collective, and the Class, for wage theft, spread of hours pay, and for failure to pay employees on a timely basis, as required by law;

h. An award of $5,000.00 to each employee in the Class, including Plaintiff, for Defendants' failure to provide them with proper wage notices as required by NYSLL 195(1);

i. An award of $5,000.00 to each employee in the Class, including Plaintiff, for Defendants' failure to provide them with the proper wage statements as required by NYSLL 195(3);

j. An award to Plaintiff Mossos of the maximum damages available under NYSLL Section 215 of $20,000.00 for his retaliatory discharge plus an award of front pay in lieu of reinstatement and an award of lost compensation and damages;

k. An award of interest on the wages found to be owed, at the rate of nine percent per year from the date the wages were earned, pursuant to Section 5004 of the NY Civil Practice Law and Rules;

l. An award to Plaintiff Mossos of back and front pay, compensatory damages, and punitive damages on the sex discrimination and retaliation claims under Title VII and NYSHRL;

m. An award of reasonable attorneys' fees;

n. An award representing the costs and disbursements of this action; and

o. Any other and further relief that this Court deems just and proper.

Dated: Warwick, New York
April 30, 2026

JENNIFER ECHEVARRIA (JE5544)
Echevarria Law, PLLC
*Attorney for Plaintiff, proposed FLSA Collective, and potential Class*
P.O. Box 1053
Warwick, New York 10990
(T) 845-544-7644
(E) Jennifer@EchevarriaLawPLLC.com

# VERIFICATION

STATE OF NEW YORK )<br>
) SS.:<br>
COUNTY OF DUTHCESS )

Juan S. Mossos, being duly sworn, says:

I am the Plaintiff in the action herein.

I have read the annexed Verified Complaint dated April 30, 2026, know the contents thereof and the same are true to my knowledge, except those matters therein which are alleged upon information and belief and as to those matters I believe them to be true.

JUAN S. MOSSOS

Sworn to before me this
30th day of April, 2026

NOTARY PUBLIC

YISSETT SANDOVAL
No. 01SA6331064
Notary Public, State of New York
Qualified in Westchester County
My Commission Expires Sept. 28, 2027

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER/MEMBER/PARTNER LIABILITY FOR SERVICES RENDERED**

TO: NDC Newburgh LLC d/b/a Noches de Colombia Newburgh, Juan Camilo Rodriguez, and Sandra Milena Valencia

**PLEASE TAKE NOTICE** that, pursuant to the provisions of Section 630 of the Business Corporation Law of the State of New York, you are hereby notified that Juan S. Mossos and others similarly situated intend to charge you and hold you personally liable, jointly and severally, as the top ten shareholders of NDC Newburgh LLC d/b/a Noches de Colombia Newburgh, for all debts, wages and/or salaries due and owing to them as laborers, servants and/or employees of the said entity for services performed by them for the said entity within the 6 years preceding the date of this Notice and have expressly authorized the undersigned, as their attorneys, to make this demand on their behalf.

Dated: Warwick, New York
April 30, 2026

JENNIFER ECHEVARRIA (JE5544)
Echevarria Law, PLLC
*Attorney for Plaintiff, proposed FLSA Collective, and potential Class*
P.O. Box 1053
Warwick, New York 10990
(T) 845-544-7644
(E) Jennifer@EchevarriaLawPLLC.com

**DEMAND BY EMPLOYEES TO INSPECT SHARE RECORDS AND MINUTES**

TO: NDC Newburgh LLC d/b/a Noches de Colombia Newburgh, Juan Camilo Rodriguez, and Sandra Milena Valencia

PLEASE TAKE NOTICE that as Plaintiff Juan S. Mossos and others similarly situated as employees and former employees of the above entities intend to demand, pursuant to the provisions of Section 630 of the Business Corporation Law of the State of New York, payments of debts, wages and/or salaries due and owing to them as laborers, servants, and/or employees of the above entity and have expressly authorized the undersigned, as their attorneys, to make this demand on their behalf;

PLAINTIFF HEREBY DEMANDS the right to examine, in person or by agent or attorney, during usual business hours, the minutes of the proceedings of the shareholders of, members of, or partners in the above entity, and the corporate books and records of shareholders, and to make extracts therefrom on or about 5 days from receipt of this Notice.

Dated: Warwick, New York
April 30, 2026

JENNIFER ECHEVARRIA (JE5544)
Echevarria Law, PLLC
*Attorney for Plaintiff, proposed FLSA Collective, and potential Class*
P.O. Box 1053
Warwick, New York 10990
(T) 845-544-7644
(E) Jennifer@EchevarriaLawPLLC.com

**DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that Defendants take affirmative steps to preserve all recordings, data, documents, records, written communications and all other tangible things that relate to Plaintiff and his employment at NDC Newburgh LLC d/b/a Noches de Colombia Newburgh, the events described in the Verified Complaint dated April 30, 2026, and any third party communications and/or records pertaining to Plaintiff or the claims or defenses raised in his Verified Complaint. Defendants are obligated to take steps to preserve such recordings, data, documents, records, written communication, and other tangible things; an adverse jury instruction may be given if it is found that Defendants neglected to preserve such documents in their possession, custody and/or control after receiving this Demand. This Demand shall not narrow the scope of any discovery demands nor of any independent document preservation obligation that may apply to Defendants.

Dated: Warwick, New York
April 30, 2026

JENNIFER ECHEVARRIA (JE5544)
Echevarria Law, PLLC
*Attorney for Plaintiff, proposed FLSA Collective, and potential Class*
P.O. Box 1053
Warwick, New York 10990
(T) 845-544-7644
(E) Jennifer@EchevarriaLawPLLC.com

**NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for ONE THIRD (1/3) of the amount awarded, or such other amount as the Court determines reasonable. All rights relating to attorney's fees have been assigned to counsel.

Dated: Warwick, New York
April 30, 2026

JENNIFER ECHEVARRIA (JE5544)
Echevarria Law, PLLC
*Attorney for Plaintiff, proposed FLSA Collective, and potential Class*
P.O. Box 1053
Warwick, New York 10990
(T) 845-544-7644
(E) Jennifer@EchevarriaLawPLLC.com